UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

      Plaintiff,

v.                                 Case No. 22-CR-20200
                                     HON. MARK A. GOLDSMITH

D-2 ALI SAAD,

      Defendant.

_____/

### OPINION & ORDER DENYING DEFENDANT'S MOTION TO WITHDRAW GUILTY PLEA (Dkt. 388)

Defendant Ali Saad pled guilty to conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349.  He now moves to withdraw his guilty plea, arguing that it was not intelligently made and not supported by a sufficient factual basis.  The gist of the motion is two-fold: (i) that he was not informed by the Court that the willfulness element of the offense required the Government to prove that he knew his conduct was unlawful, and (ii) the facts he admitted to did not show that he acted with knowledge that his conduct was unlawful.  Motion at PageID.7632 (Dkt. 388); Reply at PageID.8056 (Dkt. 404).

The Court concludes otherwise, because the record fairly supports that Saad was aware at the plea taking that the Government had to prove that he knew his conduct was unlawful.  Further, a factual basis was established, demonstrating that Saad in fact knew that his conduct was unlawful.  Because the current record is sufficient to reach these conclusions, no evidentiary hearing is needed.[1]  For the reasons that follow, the motion is denied.

---

[1] The Court agrees with the Government that no evidentiary hearing is required because the issues to be decided are legal in nature, rather than factual.  Gov't Supp'l Br. (Dkt. 426).  The record is

## I.    BACKGROUND

On January 14, 2025—one day before his trial was set to begin—Saad pled guilty to Count II of the Amended Indictment (Dkt. 18), charging him with conspiracy to commit health care fraud and wire fraud.[2]  He waited almost nine months (October 8, 2025) to file the instant motion to withdraw his guilty plea.  In the interim, the six-week trial that he avoided proceeded without him against two alleged co-conspirators: Sherif Khalil (who controlled a urine testing laboratory) and Nancy Harris (who owned a clinic whose patients required testing).  The Government's overall theory as to Count II was that the conspirators sought "to unlawfully enrich themselves by, among other things…submitting…false and fraudulent claims to Medicare," Am. Indictment ¶ 49, through various means, including paying for referrals of drug test orders.  Id. ¶¶ 50, 55.  The jury acquitted Harris and convicted Khalil (Dkt. 327), but Khalil's conviction was vacated when Khalil's motion for acquittal was granted (Dkt. 369).

In his motion, Saad does not fully explain his nearly nine-month delay in moving to withdraw his plea.  He says that "since pleading guilty, I have regretted pleading guilty," and that "[m]y regret has grown over time as I have learned more about the law."  Aff. ¶ 15 at PageID.7649.

---

clear as to what Saad was told at the plea-taking hearing, what he said at that hearing,  and what is contained in the Rule 11 plea agreement.  To the extent Saad wanted to offer further testimony, he did so by way of an affidavit.  Aff. at PageID.7648–7650 (Dkt. 388-1).

 A recent decision by the Sixth Circuit, United States v Clark, 172 F.4th 940 (6th Cir. 2026) does not change this analysis.  There, the Sixth Circuit remanded the case for an evidentiary hearing because there was a factual dispute regarding what the defendant was told by her former attorney in connection with the guilty plea and whether there was evidence of ineffective assistance of counsel.  Id. at 994.  Neither of those issues is present here.

[2] Although the indictment charged conspiracy to commit both health care fraud and wire fraud, Saad pled guilty to conspiracy to commit health care fraud only.

He acknowledges learning about Khalil's acquittal by the Court, which occurred on July 11, 2025.

Id.

Because Saad has not shared precisely what prompted his about-face, that cannot play a role in the analysis of his motion beyond his generalized statement. However, as explained below, the record is robust regarding the factors courts traditionally consider in deciding whether to allow withdrawal of a guilty plea -- all of which point in favor of denying the motion.

## II.     ANALYSIS

When a defendant asks to withdraw his guilty plea before sentencing, he must establish a "fair and just reason for the request." Fed. R. Crim. P. 11(d). The burden of proof is on the defendant to demonstrate that his motion should be granted. United States v. Ellis, 470 F.3d 275, 280 (6th Cir. 2006). This burden reflects that "the withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." Id. Courts must consider "all the circumstances" surrounding the plea and the motion to withdraw. United States v. York, 405 F. App'x 943, 949 (6th Cir. 2011). In evaluating a request to withdraw a guilty plea, courts have typically looked at the following factors, among others, understanding that no one factor controls:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

United States v. Bashara, 27 F.3d 1174, 1181 (6th Cir. 1994) abrogated on other grounds, by statute, as recognized in, United States v. Caseslorente, 220 F.3d 727, 734 (6th Cir. 2000).

Saad's delay in seeking to set aside his guilty plea falls well beyond the pale of timeliness. While there is no fixed period beyond which a guilty plea will not be entertained, the Sixth Circuit

3

has held that "[a] delay of more than six months presents a defendant with an almost insurmountable obstacle to withdrawal." United States v. Culp, 608 F. App'x 390, 391 (6th Cir. 2015). Much shorter delays have been found unacceptable.[3] Saad's delay of nearly nine months greatly exceeds much shorter delays that have been rejected. Based on a legion of cases, this factor alone would justify denial of the motion. But there is more.

Saad's explanation for the delay is sheer gossamer. He says his regret grew as he "learned more about the law." Aff. ¶ 15. But he was represented by two experienced criminal lawyers who presumably were familiar with any potential defects in the plea taking. Saad offers no case—and the Court is aware of none—holding that a defendant's delay in becoming aware of legal questions raised by his plea provides a meritorious explanation for the delay.

Saad's change of heart is essentially "pleader's remorse"—which does not fit the profile for a plea worthy of withdrawal. Courts are admonished that the allowance for withdrawal of a plea is designed to provide relief for a "hastily entered plea made with unsure heart and confused mind;" its purpose is "not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading." York, 405 F. App'x at 949.

Saad's plea was hardly a "hastily entered plea." He was charged on April 12, 2022— almost three years before he ultimately pled. He was represented by two experienced criminal lawyers, whom he had retained. He also consulted with his family and his religious leader. Aff.

---

[3] The following is a sampling of cases denying motions to withdraw guilty pleas based, at least in part, on lack of timeliness: United States v. Valdez, 362 F.3d. 903, 912 (6th Cir. 2004) (75 days); United States v. Durham, 178 F.3d 796, 798 (6th Cir. 1999) (77 days); United States v. Spencer, 836 F.2d 236, 239 (6th Cir. 1987) (five weeks); United States v. Benton, 639 F.3d 723, 727 (6th Cir. 2011) (93 days); United States v. Haygood, 549 F.3d 1049, 1053 (6th Cir. 2008) (4.5 months); United States v. Smith, 46 F. App'x 247, 249 (6th Cir. 2002) (113 days); United States v. Pluta, 144 F.3d 968, 973 (6th Cir. 1998) (4 months).

¶ 10.  He asked his Imam to perform the religious ritual of istikhara, as a way of seeking "divine guidance" when one faces "important decisions."  The Imam performed the ritual and advised Saad that he faced "destruction" if he went to trial.  Saad states that he "trusted in this practice to make my decision."  Id.

Having explored his options and having sought advice from trusted sources, he ultimately decided to plead guilty because he believed he would be convicted, even though he now says he believed he was innocent.  Aff. ¶ 9.  These are the actions of a careful and thoughtful individual— not the rushed decision of a harried and hurried criminal defendant.

The plea taking was itself an unhurried and deliberate proceeding, taking nearly an hour and yielding a transcript of 37 pages.  See Plea Hr'g Tr. (Dkt. 385).  The proceeding was punctuated with pauses for Saad to discuss issues with his lawyers, id. at PageID.7454–7455, 7458, to ask questions of the Court, id. at PageID.7457–7458 ("[C]an we go through that one more time so I understand the question?"); and to make changes to the Rule 11 agreement in the courtroom, id. at PageID.7455.

Saad's personal history also shows that he was fully equipped to engage with the plea taking.  A 42-year old individual at the time of the plea, Saad had graduated high school and earned a year of college credit.  According to the pre-sentence report, he holds a pharmacy license and has worked in different businesses, including laboratories and pharmacies.  He is also no stranger to the process of pleading guilty, having pled to four misdemeanors between 2002–2006, some of which led to serving jail time.

All of the above factors counsel denial of Saad's motion -- as do the claimed faults in the plea-taking that Saad contends justify his request.  He focusses on the element of willfulness, on which he bases two arguments.  One is that he did not knowingly and intelligently plead guilty

5

because the element of willfulness was not properly defined.  The other argument is that the factual basis was insufficient because there were no facts presented establishing that he knew his conduct was unlawful when he committed the offense.  Neither is a "fair and just reason" for allowing withdrawal, because the plea colloquy belies both of these points.

As for the elements of the offense, the Court explained them as part of going over the Rule 11 plea agreement with Saad, noting that "[a]t any point you can ask your attorneys any questions that you'd like."  Plea Hr'g Tr. at PageID.7447.  The Court explained that a provision in the agreement sets out the "elements of the count of conviction," meaning "the different parts of the crime that the government has to prove against you beyond a reasonable doubt."  Id. at PageID.7448.  Saad was asked whether he understood the term "elements" as it had just been explained.  Saad requested that the question be repeated and the Court complied.  After the question was repeated, Saad affirmed that he understood the provision.  Then, the Court recited the elements:

> THE COURT: Okay and here are those elements; that two or more persons conspired or agreed to commit the crime of healthcare fraud in violation of a statute known as Title 18 United States Code, Section 1347 and that you knowingly joined -- let me state that again, and that you willfully joined in this conspiracy agreement knowing the unlawful purpose of the plan. Do you understand those elements?
>
> THE DEFENDANT: I do, your Honor.
>
> THE COURT: And do you believe the government can prove those elements against you beyond a reasonable doubt?
>
> THE DEFENDANT: Correct, your Honor.
>
> THE COURT: Are you saying yes?
>
> THE DEFENDANT: Yes, your Honor. Yes.

Id. at PageID.7448–7449.

The colloquy established that Saad understood that conspiracy to commit health care fraud was defined to mean willfully joining a conspiracy "knowing its unlawful purpose." Nothing more was required to satisfy the Court's obligation to inform him of, and determine that he understands "the nature of each charge to which the defendant is pleading." Fed. R. Crim. P. 11(b)(1)(G).

Saad argues that joining a conspiracy knowing its unlawful purpose is not "the same as willfulness." Reply Br. at PageID.8057. As he explains it: "One can have general awareness of the conspiracy's wrongful goals but lack knowledge about whether his specific conduct is illegal." Id. But Saad is importing a concept applicable to a substantive offense into a conspiracy offense. A conspiracy involves no conduct beyond an agreement. United States v. Yang, 281 F.3d 534, 544 (6th Cir. 2002) ("Conspiracy is nothing more than the parties to the conspiracy coming to a mutual understanding to try to accomplish a common and unlawful plan." (punctuation modified)). There is no "specific conduct" that must be proven. See United States v. Rios, 830 F.3d 403, 424 (6th Cir. 2016). By contrast, substantive offenses, such as the commission of health care fraud do consist of specific conduct. And the willfulness element would require knowing that such specific conduct was unlawful. United States v Singh, 147 F.4th 652, 658 (6th Cir. 2025). Joining a conspiracy knowing its unlawful purpose does satisfy the willfulness element. And it was a conspiracy offense, not a substantive offense, to which Saad pled guilty.

Saad cites cases in a misguided effort to demonstrate that willfulness was not properly explained to him. One of those cases, Singh, 147 F.4th 652—decided some seven months after the guilty plea and some two months before Saad filed his motion—addressed jury instructions for the substantive offense of health care fraud. The court stated, in dictum, that the jury instructions failed to convey the scienter necessary to secure a conviction under 18 U.S.C. § 1347, i.e., that the

7

defendant "acted with knowledge that [her] conduct was unlawful."[4] Saad's guilty plea was entirely consistent with Singh, as he acknowledged that he understood that the conspiracy charge to which he was pleading required the Government to prove that he acted willfully, that is, joining the conspiracy "knowing the unlawful purpose of the conspiracy."

Although Saad argues that the jury instructions used at the trial in which he did not participate were not consistent with Singh, he does not explain what relevance that has to his motion. The issue is not whether jury instructions were correct in a trial in which Saad did not participate. The issue is whether he understood that the Government had to prove that he joined the conspiracy knowing its unlawful purpose. He plainly did.[5]

Saad also contends that there was insufficient factual basis because the facts admitted by him do not show that he acted with knowledge that his conduct was unlawful. Mot. at PageID.7634. Again, the record belies that assertion. His Rule 11 agreement states that Saad "knowingly and willfully joined, agreed to, and participated in an ongoing scheme to defraud Medicare." Plea Agreement at PageID.2619 (Dkt. 269). It also states that he:

> joined in a conspiracy and participated in it with [co-defendants] to unlawfully enrich themselves by, among other things: submitting, causing or allowing the submission of false and fraudulent claims to Medicare for Urine Drug Test

---

[4] The court's pronouncement on willfulness was dictum because the reversal of the conviction was based on evidentiary rulings. Singh, 147 F.4th at 660.

[5] Saad cites two other cases as "instructive," but they are not. In United States v. Goldberg, 862 F2d 101 (6th Cir. 1988), the court vacated a guilty plea because it was unclear whether the defendant, charged with misprision of a felony, understood that one of the elements of the crime required proof of "affirmative steps" to conceal the crime; the plea was also defective because of insufficient factual basis that there had been active concealment. The element of "active concealment" has no relevance to our case. Similarly, in United States v. McCreary-Redd, 475 F.3d 718 (6th Cir. 2007), the court vacated the guilty plea because the district court had not properly explained that the charge of possession of drugs with intent to distribute required proof of distribution. That has no relevance to the health care fraud conspiracy context of the present case.

("UDT") that was arranged for by Saad and [another] in return for kickback payments from Khalil and others.

Id.   The Rule 11 agreement further specified that Saad "obtained physician orders for comprehensive UDT by . . . paying money to a pain management practice in exchange for the pain management practice sending UDT testing orders to Spectra [a company allegedly controlled by Khalil]."   Id. at PageID.2620.   During the course of the conspiracy he was paid by his co-conspirators "approximately $209,735.72 in return for arranging 'comprehensive' UDT orders billed…to Medicare."   Id. at PageID.2622.

> The guilty plea colloquy duplicated the admissions of the Rule 11 plea agreement.
>
> THE COURT: Now it says here [i.e., the Rule 11 plea agreement] that from in or around January, 2016 and continuing through at least March of 2020 in this judicial district known as the Eastern District of Michigan, you knowingly and willfully joined in a scheme to defraud Medicare. Is that true?
>
> THE DEFENDANT: Yes, your Honor.
>
> THE COURT: It says that you were going to enrich yourselves by submitting, causing or allowing the submission of false and fraudulent claims to Medicare for urine drug testing that was arranged for by you and Mr. Schroeder in return for kickback payments from Mr. Khalil and others. Is that true?
>
> THE DEFENDANT: Umm, yes, your Honor.

Plea Hr'g Tr. at PageID.7451.

These all attest to Saad's acknowledgement that he was engaged in conduct that he knew was in violation of the law.  By admitting that he sought to "unlawfully" enrich himself, and that he was engaged in a conspiracy to "defraud" Medicare, Saad unquestionably acknowledged that what he was doing violated the law.  There is no way to elide the awareness of illegality that such statements make manifest.

The remaining Bashara factors further support denial of the motion.  Regarding professions of innocence, Saad has made conflicting and irreconcilable statements—under oath—on the

9

subject.  At the plea taking, he stated under oath that he was pleading guilty because he believed he was guilty:

> THE COURT: Are you pleading guilty because you believe you are guilty?
>
> THE DEFENDANT: Yes, your Honor.

Id. at PageID.7472.

Now Saad says in his affidavit that he pled guilty "even though I believed I was innocent." Aff. ¶ 14.  Saad either lied at the plea-taking or in his affidavit in support of his motion.  In doing so, he may have subjected himself to being charged with perjury.  See, e.g., United States v. Vargas-Gutierrez, 464 F. App'x 492, 496 (6th Cir. 2012) (finding that the defendant's affidavit in support of his motion to vacate weighs against granting his motion to vacate because, "[a]s the district court recognized, believing Vargas-Gutierrez's testimony at the Motion/Sentencing Hearing would also require a finding that he had committed perjury when, under oath at the plea hearing, he acknowledged the truth of the factual allegations against him").  In such circumstances, Saad's current profession of innocence rings hollow.

The last factor to be considered is prejudice, which is readily apparent here.  The Government devoted significant resources to conducting a six-week trial, which Saad decided to take a pass on.  Duplicating that effort would be costly, to say the least.  Some cooperating witnesses may be incarcerated at the time of retrial, making them unavailable for trial.  Those witnesses who did appear may have memory issues, given that this case was initiated in 2022, for a conspiracy that is alleged to have been operational in 2016 to 2020.  Similar issues of prejudice have justified denial of motions to withdraw guilty pleas.  See, e.g., United States v. Martin, 668 F.3d 787, 797 (6th Cir. 2012) ("[T]he amount of time and effort it would take to restart a trial and the effect of delay on individuals' memories would be prejudicial.").

All of the Bashara factors point in only one direction: Saad's motion should be denied.

10

### III.     CONCLUSION

For the above reasons, Saad's motion to withdraw his guilty plea (Dkt. 388) is denied.

**SO ORDERED.**

Dated: May 28, 2026                                         s/Mark A. Goldsmith
Detroit, Michigan                                           MARK A. GOLDSMITH
                                                            United States District Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 28, 2026.

                                                            s/Joseph Heacox
                                                            JOSEPH HEACOX
                                                            Case Manager

11